UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.

ANDREE TREMBLAY,
a Florida resident,

       Plaintiff,

vs.

OCEANIA CRUISES LTD., and
EXPERT AFRICA LIMITED,

       Defendants.

_____/

## COMPLAINT  AND DEMAND FOR JURY TRIAL

Plaintiff, ANDREE TREMBLAY ("Plaintiff"), by and through undersigned counsel,

sues Defendants OCEANIA CRUISES, LTD., a Bermuda corporation ("OCEANIA"); and

EXPERT AFRICA LIMITED ("EXPERT AFRICA"), a United Kingdom Corporation with

its principal place of business in London, United Kingdom, and states as follows:

### PARTIES, JURISDICTION AND VENUE

1.      This is an action for damages in excess of seventy-five thousand ($75,000.00)

dollars, exclusive of interest and costs.

2.      Plaintiff ANDREE TREMBLAY is *sui juris* and is a resident and citizen of the

State of Florida.

3.      Defendant OCEANIA is a Bermuda Corporation with its principal place of business

in Miami, Miami-Dade County, Florida.  OCEANIA is therefore a citizen both of Bermuda and of

Florida for purposes of determining subject matter jurisdiction over this action.

4.       Defendant EXPERT AFRICA is a United Kingdom Corporation with its principal place of business in London, United Kingdom. EXPERT AFRICA is therefore a citizen of the United Kingdom.

5.       Subject matter jurisdiction exists based on admiralty pursuant to 28 U.S.C. §1333 as the events and injuries alleged below arose out of the activities and services provided to Plaintiff in connection with a voyage involving a vessel sailing on and located within navigable waters, and arose out of a traditional maritime activity, the operation of a passenger cruise vessel.

6.       Defendant, OCEANIA, at all times material hereto, personally or through an agent:

   a.       Operated, conducted, engaged in or carried on a business venture in this state and/or   county, or had an office or agency or principal place of business in this state and/or county;

   b.       Was engaged in substantial activity within this state;

   c.       Operated vessels in the waters of this state;

   d.       Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193;

   e.       The acts of Defendant OCEANIA set out in this Complaint occurred in whole or in part in this county and/or state.

   f.       Defendant OCEANIA was engaged in the business of providing to the public and to the Plaintiff in particular, for compensation, vacation cruises aboard their vessel.

7.       In the operative ticket contract, OCEANIA requires fare paying passengers such as the Plaintiff to bring any lawsuit against it arising out of injuries or events occurring on the cruise voyage in this federal judicial district. Accordingly, venue is proper in this Court.

8.      Venue is also proper in this district because OCEANIA's principal place of business is located within this district.

9.      The Plaintiff has complied with all conditions precedent to bringing this action. The Plaintiff reported the accident to the ship's medical crew shortly after it occurred, and written medical records were prepared onboard the ship.

**EXPERT AFRICA's ACTIVITIES IN FLORIDA SATISFY A FINDING OF SPECIFIC JURISDICTION UNDER FLORIDA STATUTE § 48.193(1)(a).**

10.     At all times material hereto, the activities of Defendant, EXPERT AFRICA, in Florida satisfy the specific jurisdiction provision of Florida Statute §48.193(1)(a), by acts that include, but are not limited to, (a) maintaining a principal place of business in Miami, Florida; (b) reaching out to Florida-based cruise lines, insurers, cruise industry associates, and/or premium financing companies for purposes of operating, conducting, engaging in, and/or carrying on a business and/or business venture in this state; and/or (c) contractually agreeing to indemnify Florida-based cruise lines (entities mostly located in Miami and Fort Lauderdale) for any harm resulting to cruise passengers, thereby insuring a "person, property, or risk located within this state."

**EXPERT AFRICA's CONTRACT WITH OCEANIA MEETS ALL REQUIREMENTS TO SATISFY A FINDING OF SPECIFIC JURISDICTION UNDER FLORIDA STATUTE § 48.193(1)(a)(9).**

11.     At all times material hereto, EXPERT AFRICA entered into a contract with OCEANIA concerning the subject excursion, which (a) contains a choice-of-law clause designating Florida law as the governing law; (b) contains a provision whereby OCEANIA agrees to submit to the exclusive jurisdiction of the courts of Florida; (c) involves consideration of not less than $250,000 or relate to an obligation arising out of a transaction involving in the aggregate not less than $250,000; (d) does not violate the U.S. Constitution; and (e) has at least one party of

the contract that is a resident of Florida or incorporated under the laws of Florida. Therefore, the contract between OCEANIA and EXPERT AFRICA meets all requirements to satisfy a finding of specific jurisdiction under Florida Statute § 48.193(1)(a)(9).

### EXPERT AFRICA's CONTINUOUS AND SYSTEMATIC GENERAL BUSINESS CONTACTS WITH FLORIDA SATISFY A FINDING OF GENERAL JURISDICTION UNDER FLORIDA STATUTE § 48.193(2).

12.     At all times material hereto, EXPERT AFRICA has engaged in substantial and not isolated activity within this state, including, but not limited to: (a) reaching out to cruise lines in Florida and establishing long-term partnerships with them; (b) deriving a substantial portion of their revenues from their business with Florida-based cruise lines; (c) periodically traveling to Miami to meet with cruise line executives for purposes of maintaining the business relationships and/or obtaining new business; (d) procuring insurance through companies in Florida; (e) maintaining Florida entities as "Agents of Record" for insurance purposes; (f) agreeing to insure and indemnify entities in Florida; (g) signing premium financing agreements with Florida entities in order to obtain a loan to pay for liability insurance premiums; (h) buying parts and/or supplies from Florida-based suppliers to operate their excursions; (i) signing powers of attorney and/or appointing attorneys-in-fact in Florida to carry out their Florida operations; (j) participating in cruise industry trade shows in Miami (e.g., Sea trade); and/or (k) maintaining active membership in Florida Caribbean Cruise Association, based in Florida.

13.     At all times material hereto, EXPERT AFRICA has been in the business of providing excursions to cruise line passengers in South Africa through Florida-based cruise lines, including OCEANIA, and/or its affiliates. In entering into contracts with these Florida-based cruise lines, EXPERT AFRICA agrees to the exclusive jurisdiction of courts in Florida. Additionally, by being under contract with the Florida-based cruise lines, EXPERT AFRICA receives the benefit of the cruise lines' advertising and promotional efforts.

GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

14.     Additionally, at all material times, EXPERT AFRICA worked in direct coordination with OCEANIA's shoreside employees based in Miami, Florida, to facilitate and manage the subject excursion, including ticket sales and transportation arrangements. OCEANIA employees responsible for selling and promoting the excursion regularly communicated with EXPERT AFRICA personnel to confirm the availability, condition, and safety of the catamaran vessels used to transport passengers to Halifax Island. These communications included discussions about the operational status of the vessels, their compliance with safety protocols, and their capacity to safely transport OCEANIA's passengers. The nature and frequency of these communications demonstrate that EXPERT AFRICA and OCEANIA jointly planned, organized, and oversaw the logistics of the excursion, including the transportation at issue in this case.

15.     At all times material hereto, EXPERT AFRICA's arrangement with the Florida-based cruise lines and the circumstances of this case are markedly different than those at issue in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014). Herein, unlike *Daimler*, the Plaintiff is suing a Florida- based cruise line (OCEANIA) for injuries sustained while participating in an excursion operated by an agent of the cruise line (EXPERT AFRICA) – an agent set up almost exclusively to do business with cruise lines (a majority of which are based in Florida). Further unlike *Daimler*, OCEANIA is "at home" in this jurisdiction because OCEANIA maintains its principal place of business in Florida. Thus, under *Daimler*, EXPERT AFRICA is also deemed "at home" in this jurisdiction by their direct and indirect contacts with Florida (through the Florida-based cruise lines).

### EXPERT AFRICA's ACTIVITIES IN FLORIDA SATISFY A FINDING OF JURISDICTION UNDER FED. R. CIV. P. 4(K).

16.     At all times material hereto, EXPERT AFRICA is also subject to jurisdiction pursuant to Federal Rule of Civil Procedure 4(k)(2) because (a) the instant maritime tort claims

arise under federal law; (b) EXPERT AFRICA is not subject to jurisdiction in any state's courts of general jurisdiction; and (c) exercising jurisdiction over EXPERT AFRICA is consistent with the United States Constitution and laws based on EXPERT AFRICA's minimum contacts with the United States as a whole such that the maintenance of this lawsuit does not offend traditional notions of fair play and substantial justice.  These minimum contacts are set forth in the above allegations, and include, but are not limited to, EXPERT AFRICA's location and operation in the United States, as well as marketing, promoting, and selling tickets for its excursions in the United States directly and/or through cruise lines as their agents located all over the United States.

## LIABILITY AND DAMAGE ALLEGATIONS APPLICABLE TO ALL COUNTS

17.     At all material times, Defendant OCEANIA was engaged in the business of operating maritime cruise vessels for fare paying passengers and for this purpose operated, among other vessels, the vessel, the M/S NAUTICA ("NAUTICA").

18.     At all material times, including the injury date of May 23, 2024, the Plaintiff was a fare paying passenger who booked a voyage onboard the NAUTICA which offered shore excursion activities at a port of call in Luderitz, Namibia.

19.     OCEANIA entered into an agreement with EXPERT AFRICA, a foreign commercial entity located in Luderitz, Namibia in which NAUTICA agreed to market, meaning offer an excursion named the Halifax Boat Cruise to its cruise passenger(s), and sell, meaning contract with and collect money from its passengers, on behalf of EXPERT AFRICA from its passengers. In turn, OCEANIA contracted with EXPERT AFRICA for EXPERT AFRICA to provide the services, i.e., the Halifax Boat Cruise, offered by OCEANIA during the subject excursion.

20.     OCEANIA markets the subject excursion through its website, pre-cruise and on

GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

board print promotional and sales materials, onboard announcements, smart phone apps for the voyage, on board excursion desk and onboard television programming.

21.     Cruise passengers cannot purchase shore excursions, including the Halifax Boat Cruise excursion referenced in Paragraph 19, except through OCEANIA. Passengers can purchase shore excursions on OCEANIA's website during the OCEANIA booking process or on the cruise ship during the voyage.

22.     During the subject voyage, on the smart phone app offered and marketed by OCEANIA during the cruise, OCEANIA bombarded Plaintiff with different shore excursions to purchase. One of those excursions was the "Halifax Boat Cruise".

23.     The OCEANIA web brochure sent to the Plaintiff advertises the "Halifax Boat Cruise" as follows:

> Sail aboard a catamaran to Halifax Island, a small rocky setting that is one of Namibia's most important breeding sites for African Penguins. The views along the way will be spectacularly scenic, as you will pass beautiful Agate Beach, the historical lighthouse on Shark Island and the hauntingly stark landscape around Luderitz. You might also spot plenty of marine life that may include Southern Right and Humpback whales, Heaviside's dolphins and Cape fur seals. The large concentration of African penguins on Halifax Island may be an even more impressive sight. From the comfort of the catamaran, you can expect to observe them along the coast, in the water and clustered around the abandoned buildings that were once used by guano harvesters. The island is now off-limits to the public, so the penguin population can reach its natural size without human disturbance. If you hear the penguins braying like donkeys, you will understand why they are nicknamed jackass penguins.

*See Shore Excursions – Cape Town, South Africa to Lisbon Portugal – NAUTICA – May 21, 2024* attached as "Exhibit 1".

24.     Relying upon the advertisement and information provided by OCEANIA, at the recommendation of OCEANIA's concierge, and also included in the vessel's Manager's Recommendation for In-Shore excursions brochure, Plaintiff chose the "Halifax Boat Cruise"

GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

activity and purchased it from OCEANIA's website during the booking process.

25.     The fee for the excursion was charged to and collected from the Plaintiff by OCEANIA.

26.     Based upon the information and documents provided by OCEANIA to Plaintiff during the booking process, the fact that Plaintiff purchased the subject excursion tickets directly from OCEANIA, and in reliance on the information provided by OCEANIA, Plaintiff reasonably believed that they had contracted with OCEANIA to provide the "Halifax Boat Cruise" excursion and that the subject excursion was either operated by OCEANIA or through an agent/partner of or service provided hired by OCEANIA. Moreover, Plaintiff trusted that an excursion offered, marketed by, and purchased from OCEANIA, its agent (disclosed or undisclosed), and/or service provider would adhere to the highest safety standards in the industry as represented in promotional and marketing materials.

27.     To all outward appearances, OCEANIA contracted with Plaintiff to provide the subject excursion and OCEANIA was the operator of the excursion and/or the excursion was being provided by an agent/partner and/or service provider that was fully vetted and hired by OCEANIA. Furthermore, no representations contained in any of the fine print of OCEANIA's literature or website ever expressly advised Plaintiff that the circumstances were otherwise and/or that the well-recognized industry wide safety standards would not govern the excursion.

28.     Plaintiff would not have participated in the subject excursion had he known the excursion was not operated by OCEANIA and/or operated by an OCEANIA service provider adhering to well-recognized industry wide safety standards.

29.     OCEANIA contracted with Plaintiff to provide the subject excursion services and/or the services were provided by an agent/partner/joint-venturer of OCEANIA, namely

EXPERT AFRICA, as manifested by OCEANIA's marketing information and materials.

30.     OCEANIA never identified EXPERT AFRICA as the owner and operator of the excursion; to the extent Plaintiff was aware of EXPERT AFRICA at all, Plaintiff understood EXPERT AFRICA was an agent/partner/joint venturer and/or service provider hired by OCEANIA to provide the "Halifax Boat Cruise" excursion services offered by OCEANIA.

31.     OCEANIA obtains payment for the excursions online and/or onboard the cruise through the guests' onboard account.

32.     At all times material hereto, OCEANIA participated in the income and losses generated by the operation of the subject excursion.

33.     OCEANIA exercises control over the subject excursion in its requirements for its operation, insurance and safety.

34.     OCEANIA has control over the arrangement, marketing and sales of the subject excursion.

35.     OCEANIA passengers cannot book the subject excursion without booking directly through OCEANIA.

36.     EXPERT AFRICA is a service provider hired to provide the subject excursion that OCEANIA agreed by contract to provide, as an agent of OCEANIA, a partner with OCEANIA and/or a joint venturer with OCEANIA. Any representations of OCEANIA to the contrary do not control the legal status of the parties. Further, even if the excursion operator were an independent contractor, OCEANIA is not relieved of its duty of care to passengers with whom it contracted simply because OCEANIA hires a contractor to provide the services offered by OCEANIA and/or to verify that its representations made in its literature and elsewhere about its excursions being operated in a safe manner in accordance with applicable well recognized minimal safety standards

and/or that participants would be safe while participating.

37.     The subject excursion- specifically the "Halifax Boat Cruise"- given the nature and type of activity offered and provided by or on behalf of OCEANIA, is an inherently and foreseeably dangerous activity, liability for which OCEANIA cannot delegate, and remains liable to Plaintiff.

38.     On May 23, 2024, the NAUTICA called on Luderitz, Namibia.

39.     On May 23, 2024, Plaintiff presented herself to a predetermined meeting point and was transported to the subject catamaran, which was to be used to transport excursion participants to Halifax Island.

40.     After arriving at the designated location to begin the subject excursion, approximately twenty participants, including Plaintiff ANDRÉE TREMBLAY, were instructed to board the catamaran operated by EXPERT AFRICA. The vessel then traveled to Halifax Island. Upon reaching the island, the catamaran came to a stop, and passengers were permitted to move about the exterior areas of the vessel to better observe the island's penguins and other wildlife. While attempting to approach the edge of the catamaran for a better view, Plaintiff ANDRÉE TREMBLAY lost her balance when the vessel was shaken by a wave. In an effort to steady herself, Plaintiff leaned toward the side of the catamaran, where an unsecured hatch had been left open. As a direct result of the open and unguarded hatch, Plaintiff fell into the opening and dropped approximately six to seven feet, sustaining serious injuries.

41.     As a direct and proximate result of the incident described above in Paragraph 39, Plaintiff was injured in and about her body and extremities, sustaining injuries including a fracture of her left hip, suffered pain and mental anguish therefrom, and sustained disfigurement, disability

and the inability to lead a normal life. Furthermore, she incurred medical, hospital, and other out of pocket and health care expenses in the past and future as a result of her injuries, the future medical damages being reasonably certain to occur. She has sustained aggravation or activation of preexisting injuries and conditions. These damages are permanent or continuing in nature and Plaintiff will continue to sustain and incur these damages in the future.

## COUNT I– NEGLIGENT MAINTENANCE
## (AGAINST EXPERT AFRICA )

42.     Plaintiff realleges, adopts and incorporates by reference the allegations of Paragraphs 1 through 41 as though alleged originally herein and further alleges the following matters:

43.     At all material times, EXPERT AFRICA owed a duty to Plaintiff, as a fare-paying passenger, customer, and invitee aboard the Halifax Boat Cruise shore excursion, to exercise reasonable care in the maintenance, inspection, and upkeep of the catamaran to ensure that it was in a reasonably safe condition for its intended use by passengers.

44.     At all relevant times, EXPERT AFRICA was responsible for the proper inspection, maintenance, and safe condition of the catamaran, including the area where the subject hatch was located.

45.     At all material times, EXPERT AFRICA, through its agents, employees, and crew members, either knew or, in the exercise of reasonable care, should have known that a hatch on the deck of the catamaran was left unsecured, uncovered, and open, thereby exposing passengers to a dangerous and unguarded drop of approximately six to seven feet. The open hatch was not a transient or momentary condition. Instead, it remained open for a substantial length of time during active passenger use of the catamaran, meaning there was ample time for any reasonable operator or crew

member to discover the condition and take corrective action. EXPERT AFRICA personnel, who regularly traversed the area where the hatch was located, failed to identify, correct, or warn of this hazard, despite its visible and obvious danger.

46. The open hatch was located in a walkway or common area used by passengers and crew, and remained in this hazardous condition for an extended period of time without being secured, guarded, inspected, or repaired. The dangerous condition was readily observable and would have been discovered through reasonable inspection and maintenance protocols.

47. EXPERT AFRICA breached its duty to maintain the catamaran in a reasonably safe condition and was negligent in one or more of the following ways:

 a. Failing to secure, close, or properly cover the subject hatch;

 b. Failing to conduct timely or adequate inspections of the deck area where the hatch was located;

 c. Failing to implement or enforce proper maintenance protocols or deck safety procedures;

 d. Permitting the hatch to remain open for an unreasonable period of time in a location known to be accessible and traversed by passengers;

 e. Failing to train or supervise its crew members regarding the maintenance and securing of hazardous areas such as open hatches;

 f. Failing to correct or mitigate a known danger that had existed long enough that reasonable inspection and maintenance would have discovered it.

48. As a direct and proximate result of one or more of EXPERT AFRICA's negligent acts as described above, the Plaintiff fell down the opening of the hatch and fell as alleged in Paragraph 40 above and has thereby sustained and will continue in the future to sustain the

damages alleged in Paragraph 41 above.

49.     **WHEREFORE**, Plaintiff demands judgment for all damages recoverable under the law against the Defendant EXPERT AFRICA, as well as court costs and further demands trial by jury for all such issues so triable as a matter of right.

## COUNT II – NEGLIGENT FAILURE TO WARN
### (AGAINST EXPERT AFRICA)

50.     Plaintiff adopts, realleges and incorporates by reference all allegations of Paragraphs 1 through 41 above and further alleges the following matters.

51.     At all material times, EXPERT AFRICA owed a duty of reasonable care to the Plaintiff, a fare-paying patron, customer, and invitee of the Halifax Boat Cruise shore excursion. This duty included the obligation to warn passengers, including the Plaintiff, of any hazardous conditions aboard the subject catamaran that EXPERT AFRICA knew of, or in the exercise of reasonable care should have known of, and which invitees could not reasonably be expected to discover on their own due to the presence of other passengers and other obstacles obscuring the passengers' view.

52.     At all material times, EXPERT AFRICA, through its employees, agents, and crew members, either knew or should have known of the existence of the dangerous condition onboard the catamaran, namely, an unsecured hatch leading to a six-to-seven-foot drop due to its location in a commonly trafficked area.

53.     At all material times, EXPERT AFRICA, through its officers, agents, and employees, possessed actual and/or constructive notice of the hazardous condition created by leaving the hatch unsecured and agape, thereby exposing invitees such as the Plaintiff to a sudden and severe fall. The open hatch was obvious to EXPERT AFRICA personnel, had existed for an

GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

extended and unreasonable period of time, and was situated along a heavily trafficked area of the catamaran regularly accessed by crew and passengers alike. This condition was easily discoverable through even minimal inspection, and EXPERT AFRICA's failure to address or warn of it demonstrates a clear breach of its duty of care. Moreover, to the extent that similar incidents or internal safety policies existed, EXPERT AFRICA was on heightened notice of the foreseeable risk presented by this hazard.

54.     Notwithstanding its actual and/or constructive knowledge of the dangerous condition onboard the catamaran, EXPERT AFRICA breached its duty of reasonable care owed to the Plaintiff by failing to provide any warning—verbal, visual, or otherwise—of the open and unguarded hatch, and was thereby negligent in one or more of the following ways:

     a. Failing to warn passengers of the open hatch despite actual or constructive knowledge of its existence;

     b. Failing to post visible signage or markings around the open hatch area to alert passengers of the drop;

     c. Failing to verbally instruct or warn passengers about the presence of the hatch before or during the excursion;

55.     As a direct and proximate result of one or more of EXPERT AFRICA's negligent acts as described above, the Plaintiff fell down the opening of the hatch and fell as alleged in Paragraph 40 above and has thereby sustained and will continue in the future to sustain the damages alleged in Paragraph 41 above.

**WHEREFORE,** Plaintiff demands judgment against EXPERT AFRICA for compensatory damages, interest and the costs of this action and further demands trial by jury of all issues so triable as of right.

GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

## COUNT III- NEGLIGENT SELECTION OF TOUR OPERATOR

## (AGAINST OCEANIA)

56.     Plaintiff adopts, realleges and incorporates by reference all allegations of Paragraphs 1 through 41 above and further alleges the following matters.

57.     At all material times, OCEANIA owed passengers, including Plaintiff, the duty to exercise reasonable care to hire a competent and careful tour operator/service provider to perform the excursion. OCEANIA knew or should have known that its duty of reasonable care required that a reasonable investigation and background check should have been performed by it before entering into an agreement with OCEANIA.

58.     OCEANIA knew or reasonably should have known, at the time of hiring/selection, that OCEANIA was incompetent or unfit to conduct the subject excursion because:

d.   EXPERT AFRICA failed to train or supervise its employees and crew in basic maritime safety practices, such as securing access points, monitoring passenger movement, and inspecting common areas during operations;

e.   EXPERT AFRICA's vessels, including the catamaran involved in the subject excursion, were not adequately maintained, inspected, or certified as reasonably safe for passenger use, and these deficiencies were discoverable upon a reasonable inspection or background check;

59.     OCEANIA breached its duties to hire a competent and careful tour operator/service provider to perform the subject excursion and was thereby negligent in one or more of the following ways:

GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

a.  Failing to conduct a reasonable background check or investigation into EXPERT AFRICA's qualifications, safety protocols, incident history, or operational competency prior to selecting it as a shore excursion provider;

b.  Endorsing, promoting, and marketing the Halifax Boat Cruise excursion operated by EXPERT AFRICA to passengers—including Plaintiff—without verifying that the operator had adequate safety procedures in place to protect guests from foreseeable hazards, such as unsecured hatches;

c.  Failing to require EXPERT AFRICA to provide documentation of compliance with applicable maritime safety regulations or minimum operational standards prior to contracting for the excursion;

d.  Failing to monitor, audit, or supervise the ongoing safety and performance of EXPERT AFRICA's excursions after entering into a business relationship, despite its continuing obligation to exercise reasonable care in protecting its passengers;

e.  Delegating critical safety responsibilities to an operator known or reasonably knowable to be unfit or unsafe, thereby exposing Plaintiff and other passengers to foreseeable risks of harm;

f.  Placing profits or convenience above passenger safety by selecting EXPERT AFRICA without adequate vetting, due diligence, or regard for the safety consequences of using an unsafe operator.

60.  Despite OCEANIA's lack of knowledge of EXPERT AFRICA's fitness to operate the excursion in a prudent and safe manner, it allowed for and/or engaged with and/or negligently selected and/or approved of EXPERT AFRICA to operate the excursion.

GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

61.     As a direct and proximate result of one or more of the Defendant's negligent acts as described above, the Plaintiff was injured as described in Paragraph 40 above and has thereby sustained and will continue in the future to sustain the damages alleged in Paragraph 41 above.

**WHEREFORE,** Plaintiff demands judgment against Defendant OCEANIA for compensatory damages, interest and the costs of this action and further demands trial by jury of all issues so triable as of right.

## COUNT III - NEGLIGENT RETENTION OF TOUR OPERATOR
## (AGAINST OCEANIA)

62.     Plaintiff adopts, realleges and incorporates by reference all allegations of Paragraphs 1 through 41 above and further alleges the following matters.

63.     At all material times, OCEANIA owed passengers, including Plaintiff, the duty to exercise reasonable care, when reviewing its ongoing relationships with vendors and tour operators, to retain a competent and careful tour operator/service provider to continue to perform the excursions offered.

64.     OCEANIA knew or reasonably should have known, during the course of its retention of EXPERT AFRICA, that EXPERT AFRICA was unfit or incompetent to continue operating the Halifax Boat Cruise excursion due to one or more of the following:

   a.   Knowledge that EXPERT AFRICA lacked formal employee safety training programs, inspection checklists, or documented compliance with maritime safety regulations;

   b.   Knowledge that the catamarans used for the Halifax Boat Cruise contained hatches that were routinely left open and unmarked, without adequate warnings, barriers, or crew supervision, thereby creating a foreseeable risk of serious injury to passengers;

   c.   Knowledge that the area of the vessel where the open hatch was located was frequently traversed by passengers, including children, and that EXPERT AFRICA failed to

GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

monitor or control access to this area in accordance with standard passenger safety practices;

65.     OCEANIA breached its continuing duties to retain a competent and careful tour operator/service provider to perform the subject excursion and was thereby negligent in one or more of the following ways:

a. Failing to conduct periodic safety audits, performance reviews, or investigations into the continued fitness and competency of EXPERT AFRICA during the course of its business relationship;

b. Failing to suspend, terminate, or condition its continued relationship with EXPERT AFRICA upon implementation of improved safety practices after being placed on actual or constructive notice of unsafe operating conditions, including the use of catamarans with unguarded or unsecured hatches;

c. Failing to implement or enforce policies or procedures requiring ongoing monitoring of third-party excursion operators, despite knowing that the safety of passengers depended in part on the conduct and preparedness of those operators;

d. Continuing to promote and sell the Halifax Boat Cruise excursion operated by EXPERT AFRICA to passengers, including Plaintiff, even after learning—or after a reasonable investigation would have revealed—that EXPERT AFRICA had not corrected safety deficiencies and was exposing passengers to foreseeable dangers;

e. Failing to implement any system of oversight or quality control for its long-term excursion partners, thereby allowing known or knowable safety hazards to persist aboard vessels used in excursions marketed to passengers.

66.     The negligent acts of OCEANIA, described above, allowed EXPERT AFRICA to continue to operate the excursion despite EXPERT AFRICA's failure to meet the minimum requirements for operating such excursion in a prudent and reasonable manner such that the operation of the excursion created a risk and hazard to the Plaintiff.

67.     As a direct and proximate result of one or more of the Defendant's negligent acts as described above, the Plaintiff was injured as described in Paragraph 40 above and has thereby sustained and will continue in the future to sustain the damages alleged in Paragraph 41 above.

**WHEREFORE,** Plaintiff demands judgment against Defendant OCEANIA for compensatory damages, interest and the costs of this action and further demands trial by jury of all issues so triable as of right.

## <u>COUNT IV – NEGLIGENCE BASED ON APPARENT AGENCY OR AGENCY BY ESTOPPEL (AGAINST OCEANIA)</u>

68.     Plaintiff adopts, realleges and incorporates by reference all allegations of Paragraphs 1 through 41 above and further alleges the following matters.

69.     At all times material thereto, OCEANIA made manifestations that caused Plaintiff to believe that EXPERT AFRICA had authority to act for the benefit of OCEANIA. These manifestations included:

    a.  OCEANIA advertised in series of internet, brochure, and other media about the availability of the Halifax Boat Cruise;

    b.  OCEANIA allowed its name to be utilized in connection with the advertising of EXPERT AFRICA, and the Halifax Boat Cruise;

    c.  OCEANIA made all arrangements for the subject excursion without effectively disclosing to, and warning Plaintiff that the subject excursion was being run by another entity, and/or entities, unrelated to OCEANIA;

GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

d.  OCEANIA represents on its website, at its dedicated shipboard excursion desk, and in its shore excursion brochure, that excursions are planned by partners, with no further explanation, warning or material information to allow Plaintiff and others to make informed or knowing decisions regarding the role and fitness of the partners or the passengers' vacation choices and safety;

e.  OCEANIA marketed the subject excursion using its company logo on its website and/or in its brochures and/or its ship, and in pre-cruise advertising, online and other promotional materials, without effectively disclosing to Plaintiff that said excursion was being run by another entity and/or entities;

f.  OCEANIA maintains an excursion/concierge desk on its ship whereby it offered, sold, provided information to, and answered questions of passengers about the subject excursion without effectively disclosing to Plaintiff that said excursion was being run by another entity and/or entities;

g.  OCEANIA recommended to Plaintiff not to engage in excursions, tours, activities that are not sold through OCEANIA, as OCEANIA has no familiarity with other tours or their operations, despite the ready availability of the same excursions once passengers arrive at the port of call or before over the internet, often at lower prices, solely to protect OCEANIA's profits;

h.  OCEANIA incorrectly assured Plaintiff that its insured partners adhered to the highest safety standards in the industry;

i.  The fee for the excursion was charged to the Plaintiff, and collected from the Plaintiff, exclusively by OCEANIA;

j.  Plaintiff's receipts for the purchase of the subject excursion were issued exclusively by OCEANIA; and/or

k.  OCEANIA integrated excursions into the cruise vacation experience- as port experiences, often unique to the foreign port of call, that are the *sine qua non* of cruising.

70.  Plaintiff reasonably relied on the above, as alleged, to her detriment, so as to believe that EXPERT AFRICA personnel were employees and/or agents and partners of EXPERT AFRICA when choosing the subject excursion.

71.  It was reasonable for Plaintiff to believe that EXPERT AFRICA personnel were EXPERT AFRICA employees and/or agents because the Plaintiff booked, paid for and made all necessary arrangements for the subject shore excursion with OCEANIA. OCEANIA's actions caused Plaintiff to believe that EXPERT AFRICA had authority to act on OCEANIA's behalf. At no time did OCEANIA represent to or warn the Plaintiff in particular or other cruise ship passengers, in a meaningful way, that EXPERT AFRICA's personnel were not agents, partners or employees of OCEANIA.

72.  Plaintiff's reasonable reliance was detrimental because Plaintiff would not have booked, paid for and/or participated in the subject excursion and therefore incurred any injuries had the Plaintiff known the subject excursion was neither operated by nor properly and diligently vetted by OCEANIA.

73.  On May 23, 2024, OCEANIA and/or EXPERT AFRICA and/or their agents, employees, and/or staff breached their duty to provide Plaintiff with reasonable care under the circumstances, in one or more of the following ways:

a.  Failing to provide a reasonably safe excursion environment, free from foreseeable hazards that posed a danger to paying passengers, including Plaintiff;

b.  Failing to conduct adequate inspection, oversight, and risk assessment to ensure that the subject excursion—specifically the catamaran experience to Halifax Island—was safe and suitable for passenger participation under the prevailing conditions;

c.  Failing to ensure that the excursion was operated and supervised by adequately trained, experienced, and competent personnel capable of maintaining safe conditions aboard the vessel and responding to known or foreseeable risks, such as unsecured hatches and passenger instability due to vessel motion.

d.  Failing to secure, close, or properly cover the subject hatch;

e.  Failing to conduct timely or adequate inspections of the deck area where the hatch was located;

f.  Failing to implement or enforce proper maintenance protocols or deck safety procedures;

g.  Permitting the hatch to remain open for an unreasonable period of time in a location known to be accessible and traversed by passengers;

h.  Failing to train or supervise its crew members regarding the maintenance and securing of hazardous areas such as open hatches;

i.  Failing to correct or mitigate a known danger that had existed long enough that reasonable inspection and maintenance would have discovered it.

j.  Failing to warn passengers of the open hatch despite actual or constructive knowledge of its existence;

GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

k.   Failing to post visible signage or markings around the open hatch area to alert passengers of the drop;

l.   Failing to verbally instruct or warn passengers about the presence of the hatch before or during the excursion;

74.   The foregoing acts of negligence of OCEANIA and/or EXPERT AFRICA were a foreseeable, direct and proximate cause of the Plaintiff's injuries.

75.   As a direct and proximate result of one or more of the Defendant's negligent acts as described above, the Plaintiff was injured as described in Paragraph 40 above and has thereby sustained and will continue in the future to sustain the damages alleged in Paragraph 41 above.

**WHEREFORE,** Plaintiff demands judgment against Defendant OCEANIA for compensatory damages, interest and the costs of this action and further demands trial by jury of all issues so triable as of right.

## <u>COUNT VI - NEGLIGENCE BASED ON JOINT VENTURE</u>

76.   Plaintiff adopts, realleges and incorporates by reference all allegations of Paragraphs 1 through 41 above and further alleges the following matters.

77.   At all times material thereto, OCEANIA and EXPERT AFRICA were engaged in a joint venture to provide excursions to passengers aboard OCEANIA's ship(s).

78.   At all times material thereto, OCEANIA and EXPERT AFRICA entered into an agreement where OCEANIA would sell the subject excursion to its passengers and EXPERT AFRICA would operate said excursion.

79.   As part of the joint venture, OCEANIA arranged for, sponsored, recommended, marketed, operated, sold and/or collected money for the subject excursion and the money was then

shared between OCEANIA and EXPERT AFRICA. As its part of the joint venture, OCEANIA and/or EXPERT AFRICA provided labor and/or operated the subject excursion.

80.     OCEANIA, on behalf of the joint venture, charged a fee to passengers who utilized the excursion(s). The fee was split between OCEANIA and EXPERT AFRICA.

81.     At all times material thereto OCEANIA and EXPERT AFRICA had joint and/or shared control over aspects of the joint venture.

82.     EXPERT AFRICA had control over the day-to-day working of the excursion(s).

83.     OCEANIA exercises control over the EXPERT AFRICA by way of its requirements for its operation, insurance, indemnification, and safety.

84.     OCEANIA had control over the arrangements, marketing, and sales of the excursion, and distribution of excursion tickets onboard its vessels including the NAUTICA.

85.     At all times material thereto, OCEANIA and EXPERT AFRICA shared a common purpose: to sell and operate the subject Halifax Boat Cruise excursion.

86.     At all times material thereto, OCEANIA and EXPERT AFRICA had a propriety and/or ownership interest in the subject excursion. OCEANIA had an interest in arranging, sponsoring, recommending, advertising, operating, and selling the subject excursion as well as collecting money for such an excursion, and EXPERT AFRICA had a proprietary interest in the time and labor expended in operating the subject excursion.

87.     At all times material thereto, OCEANIA and EXPERT AFRICA shared any losses sustained from the joint venture.

88.     OCEANIA and EXPERT AFRICA are jointly and severally responsible for each other's negligence.

GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

89.     At all times material thereto, OCEANIA and EXPERT AFRICA, based on the facts alleged above:

    g.   Had an intention to create a joint venture;

    h.   Had a joint propriety interest in the subject manner of the venture;

    i.   Had mutual control and/or joint control over the subject matter of the venture with respect to the provision of excursions to passengers aboard the ship;

    j.   Had a right to share in the profits of the joint venture; and

    k.   Would share losses that may have been sustained.

90.     As joint venturers, OCEANIA and EXPERT AFRICA are liable for each other's negligence. As a result, OCEANIA is liable for the negligent conduct of EXPERT AFRICA, and EXPERT AFRICA is liable for OCEANIA's negligence.

91.     On May 23, 2024, OCEANIA and/or EXPERT AFRICA and/or their agents, employees, and/or staff breached their duty to provide Plaintiff with reasonable care under the circumstances, in one or more of the following ways:

    a.   Failing to provide a reasonably safe excursion environment, free from foreseeable hazards that posed a danger to paying passengers, including Plaintiff;

    b.   Failing to conduct adequate inspection, oversight, and risk assessment to ensure that the subject excursion—specifically the catamaran experience to Halifax Island—was safe and suitable for passenger participation under the prevailing conditions;

    c.   Failing to ensure that the excursion was operated and supervised by adequately trained, experienced, and competent personnel capable of maintaining safe

GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

conditions aboard the vessel and responding to known or foreseeable risks, such as unsecured hatches and passenger instability due to vessel motion;

d.  Failing to secure, close, or properly cover the subject hatch;

e.  Failing to conduct timely or adequate inspections of the deck area where the hatch was located;

f.  Failing to conduct timely or adequate inspections of the deck area where the hatch was located;

g.  Failing to implement or enforce proper maintenance protocols or deck safety procedures;

h.  Permitting the hatch to remain open for an unreasonable period of time in a location known to be accessible and traversed by passengers;

i.  Failing to train or supervise its crew members regarding the maintenance and securing of hazardous areas such as open hatches;

j.  Failing to correct or mitigate a known danger that had existed long enough that reasonable inspection and maintenance would have discovered it;

k.  Failing to warn passengers of the open hatch despite actual or constructive knowledge of its existence;

l.  Failing to post visible signage or markings around the open hatch area to alert passengers of the drop;

92.  Failing to verbally instruct or warn passengers about the presence of the hatch before or during the excursion;

93.  As a direct and proximate result of the negligence of Defendant OCEANIA and its joint venturer, EXPERT AFRICA, the Plaintiff was injured as alleged in Paragraph 40 and has

thereby sustained and will continue in the future to sustain the damages alleged in Paragraph 41 above.

**WHEREFORE,** Plaintiff demands judgment against Defendants OCEANIA and/or EXPERT AFRICA,  jointly and severally, for compensatory damages, interest and the costs of this action and further demands trial by jury of all issues so triable as of right.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands trial by jury of all issues so triable as of right.

Executed, this 22nd day of May, 2025.

Respectfully submitted,

**<u>/s/ PHILIP M. GERSON</u>**
PHILIP M. GERSON, Esq.
Florida Bar No. 127290
pgerson@gslawusa.com
filing@gslawusa.com
EDWARD S. SCHWARTZ
Florida Bar No. 346721
eschwartz@gslawusa.com
NICHOLAS I. GERSON
Florida Bar No. 0020899
ngerson@gslawusa.com
DAVID L. MARKEL, Esq.
Florida Bar No. 78306
dmarkel@gslawusa.com
NICHOLAS M. PLYMALE, Esq.
Florida Bar No. 1057884
nplymale@gslawusa.com
GERSON & SCHWARTZ, P.A
1980 Coral Way, Miami, FL 33145
Telephone:(305) 371-6000
Facsimile: (305) 371-5749

GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com